David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
Fax: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff
*JEFFREY W. HANSON*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| JEFFREY W. HANSON, individually and on behalf of all others similarly situated, | : <br> : <br> : <br> : Civil Action No.: <br> : |
| Plaintiff, | : |
| v. | : |
|  | : |
| TMX Finance, LLC dba TITLE MAX OF NEVADA, INC.; TMX Finance of Nevada, Inc.; and TITLEMAX OF NEVADA, INC. d/b/a as TITLEMAX and or TITLEMAX OF NEVADA, | : **CLASS ACTION COMPLAINT** <br> : <br> : **JURY TRIAL DEMANDED** <br> : <br> : <br> : |
| Defendants. | : |

For this Complaint, the Plaintiff, JEFFREY W. HANSON indvidually and on behalf of all and others similarly situated, by undersigned counsel, states as follows:

## JURISDICTION

1.      This action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by negligently, knowingly, and/or willfully placing automated calls to Plaintiff's cellular phone without consent, thereby violating the TCPA.

2.      Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

3.      Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA claims. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## PARTIES

5.      The Plaintiff, JEFFREY W. HANSON ("Plaintiff" or "Mr. Hanson"),

is an adult individual residing in Las Vegas, Nevada.

6. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

7. Defendant TMX Finance, LLC ("TMX") is the parent company and owner of Defendant TMX Finance of Nevada, Inc. ("TMX Nevada"), which is registered with the Nevada Secretary of State as Entity No. E0302622012-7.

8. Defendant TMX Nevada, is doing business in the State of Nevada.

9. TITLEMAX OF NEVADA, INC. ("TitleMax Nevada") is a subsidiary, which is owned, controlled and/or operated by TMX Nevada, TMX or both.

10. TitleMax Nevada is doing business as "TitleMax" and is registered with the State of Nevada, Dept. of Business & Industry, Financial Institutions (the "FID") under the following FID license #'s: CDTH11113, CDTHB11053, CDTHB11048, CDTHB11052, CDTHB11051, CDTHB11047, CDTHB11050, CDTHB11054, CDTHB11056, CDTHB11057, CDTHB11058, CDTHB11059, CDTHB11060, CDTHB11061, CDTHB11062, CDTHB11063, CDTHB11064, CDTHB11049, CDTHB11071, CDTHB11126, CDTHB11132, CDTHB11197, CDTHB11191, CDTHB11193, CDTHB11200, CDTHB11198, CDTHB11204, CDTHB11213, CDTH11113, CDTHB11053, CDTHB11048, CDTHB11052, CDTHB11051, CDTHB11047, CDTHB11050, CDTHB11054, CDTHB11055,

CDTHB11056, CDTHB11057, CDTHB11058, CDTHB11059, CDTHB11060,

CDTHB11061, CDTHB11062, CDTHB11063, CDTHB11064, CDTHB11049,

CDTHB11072, CDTHB11071, CDTHB11073, CDTHB11074, CDTHB11075,

CDTHB11124, CDTHB11126, CDTHB11132, CDTHB11175, CDTHB11186,

CDTHB11188, CDTHB11187, CDTHB11197, CDTHB11192, CDTHB11191,

CDTHB11193, CDTHB11200, CDTHB11198, CDTHB11205, CDTHB11204,

CDTHB11209, CDTHB11207, CDTHB11213, and CDTHB11214.

11.    TMX, TMX Nevada, TitleMax Nevada, and TitleMax may be collectively referred to herein as "Defendant" and/or "Defendants".

12.    Defendants, and each of them, were and at all times mentioned herein were, a corporation and is each a "person," as defined by 47 U.S.C. § 153(39).

13.    Defendants, and each of them, at all times acted by and through one or more of its agents or representatives.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

14.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

15.    The TCPA regulates, among other things, the use of automated telephone dialing systems.

16.    47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

(A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B)     to dial such numbers.

17.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

18.     Such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

19.     Autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.

20.     On July 10, 2015, the FCC issued FCC Order 15-72, wherein the FCC[1] stated that "[a] caller may not limit the manner in which revocation [of prior express consent to call] may occur" and that the "burden is on the caller to prove it obtained the necessary prior express consent".  *Id*. at ¶ 30.

---

[1]  See Declaratory Ruling and Order, Adopted June 18, 2015 and Released July 10, 2015 regarding *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf); *see also ACA Int'l v. Fed. Comm. Comm'n*, --- F.3d ----, 2018 WL 1352922, at *17 (D.C. Cir. Mar, 16, 2018).

21.     Further, consumers (like the Plaintiff) may revoke consent (assuming consent was given) through any reasonable means.  *Id*. at ¶ 47.

22.     Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent.  *Id*. at ¶ 58.

23.     Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times. *Id*. at ¶ 61.

24.     Consumers have a right to revoke consent, using any reasonable method including orally or in writing.  *Id*. at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

25.     Prior to filing the instant complaint, Plaintiff brought an action against the Defendants alleging violations of Nevada Revised Statutes Chapter 604A.010 et seq. in which Plaintiff specifically named "TITLE MAX OF NEVADA, INC. D/B/A TITLEMAX; and Does 1-10, inclusive" as defendants ("NRS 604A Lawsuit").

26.     The NRS 604A Lawsuit was predicated on a dispute relating to the lawfulness of the loan terms entered into between Mr. Hanson and the Defendants on November 2, 2017 (the "November 2017 Loan").

27.     The NRS 604A Lawsuit was filed on December 1, 2017, twenty-nine (29) days after the parties entered into the November 2017 Loan, which was the subject of the NRS 604A Lawsuit.

28.     As alleged in the NRS 604A Lawsuit regarding the November 2017 Loan, "[o]ver the course of the year prior to filing [the NRS 604A Lawsuit], the Plaintiff was advanced several title loans from TITLEMAX (the 'Debt'), which were 'rolled-over' or refinanced several times into new, equally unaffordable and illegal loans, at TITLEMAX's urging."

29.     Consistent with the above allegation, per the terms of the November 2017 Loan, paragraph 27 stated that "[t]his is the only agreement between Lender and me for this Loan.  Lender and I have no oral agreements about the Loan.  Lender and I may change this Note only by a writing signed by us all" (the "Integration Clause").

30.     The November 2017 Loan was signed by the instant Plaintiff and counter-signed by a representative for the Defendants herein.

31.     Notably, the Plaintiff's cellular telephone number, or written consent to call same for any purpose, is absent from the November 2017 Loan terms.

32.     Indeed, even in the event of default under the November 2017 Loan, Defendants' remedy was to:

> **11.    Lender's Rights After Default; Repayment Plan:**  Lender's rights after default are cumulative and not exclusive.  If I default, Lender may declare all amounts outstanding under the Note immediately due and payable, and I must pay such amounts.  **If I default hereunder, and I am not eligible to enter into a Repayment Plan or I choose not to accept a Repayment Plan, or if I default in my obligations under a Repayment Plan, Lender may repossess and foreclose upon the Vehicle with or without judicial process.**  I may turn over the Vehicle to Lender any time after default.  I agree to pay Lender reasonable attorneys' fees and costs if Lender brings suit to enforce my obligations under this Note.  Lender also may seek any other legal or equitable relief available under Nevada law.  In exercising its rights, Lender must always act lawfully and without breaching the peace.  Lender may waive my default and consider my account in good standing if I bring the account current or make satisfactory payment arrangements with Lender.
>
> **If I default on the Loan, Lender must offer a Repayment Plan to me before commencing any civil action or process of alternative dispute resolution or repossessing the Vehicle.**

33.    The November 2017 Loan was drafted by the Defendant.

34.    The November 2017 Loan did not provide the defendant with prior express consent to place collection or any other calls to the Plaintiff's cell phone for any reason.  Moreover, to the extent that such consent was given, it was expressly rejected and drafted out the November 2017 Loan as per the Integration Clause.

35.    The parties resolved the NRS 604A Lawsuit, which was subject to a confidential "Settlement and Release Agreement" fully executed by the Plaintiff and the Defendants on February 14, 2018 by the Plaintiff and February 15, 2018 by the Defendants (the "Settlement Agreement").

36.    In part, the Settlement Agreement provided that the parties agreed to "Refrain from Transacting Business" with each other ever again as follows:

> C.    Agreement to Refrain from Transacting Business.  The Claimant agrees to never attempt to enter into another transaction with TitleMax or any TitleMax affiliate in the future.

37.    However, while the Plaintiff never reached out to establish a new business relationship with any of the Defendants after the Settlement Agreement was finalized, the Defendants however continued (illegally) communicating with the

Plaintiff via SMS text messages and automated phone calls to collect a non-existent debt.

38.     At no time after the Settlement Agreement did the Plaintiff enter, or attempt to enter, into any business transactions with any of the Defendants.

39.     He did not provide his cellular telephone number to any of the Defendants for any reason.

40.     He did not provide consent to any of the Defendants to call or contact him for any reason at any time.

41.     However, even after the Settlement Agreement was finalized, the Plaintiff received numerous automated calls and text messages from the Defendants from (at least) the following known phone number: (469) 610-4245.

42.     Specifically, Plaintiff received automated calls to his cell phone from (469) 610-4245 (which is the Defendant's corporate office number) on a daily basis (often more than once per day) after the Settlement Agreement was finalized as follows: March 5, 2018; March 6, 2018; and March 7, 2018

43.     The Plaintiff also received unsolicited SMS text messages from the Defendants after the Settlement Agreement was finalized.

44.     Indeed on March 2, 2018 Plaintiff received the following SMS Text message from the Defendants at approximately 9:50 AM Pacific Time:

**TitleMax Svc: NOTICE – We need to speak to you regarding your account.  We want to help!  Please call 702-880-0707**

45.     Defendant employs a type of technology called "Short Message Services."  The term "Short Message Services" or "SMS" is a messaging system that allows cellular phone subscribers to use their cellular telephone to send and receive short text messages, usually limited to 160 characters.

46.     An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.  As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be instantly received by the called party virtually anywhere in the world.

47.     Moreover, Defendants did not have prior express consent to place any text message calls to Plaintiff on Plaintiff's cellular telephone at any time herein and certainly not after the Settlement Agreement (February 15, 2018) as there was no longer consent to do so or a pre-existing business relationship, which any of the Defendants' could rely on to place such calls.

48.     Indeed, prior express consent to call the Plaintiff's cell phone using SMS or auto-dialed calls was never consented to; and to the extent such consent pre-

dated the November 2017 Loan as a result of the Integration Clause, the Defendants' rights were limited to those bargained for in the November 2017 Loan, which did not include or incorporate the right to use an ATDS to place phone calls or SMS text messages to Plaintiff's cell phone.

49.     Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1); and did so at all relevant times herein.

50.     Defendant or its agent/s contacted Plaintiff on Plaintiff's cellular telephone number ending in "8747" via its ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A) after the Settlement Agreement was finalized and without prior express consent to place such auto-dialed calls and SMS text messages.

51.     Upon information and belief, Defendants' ATDS has the capability of recording phone calls and call logs for both inbound and outbound calls, which would be maintained by the Defendants, likely at its corporate headquarters, since that is where the auto-dialed calls were ostensibly coming from.

52.     Defendants' ATDS can dial numbers loaded onto it by Defendants' employees and/or agents.

53.     Defendants conducted dialing campaigns using its ATDS to the Plaintiff and those similarly situated.

11

54.     "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

55.     Predictive dialing systems are a form of an automatic telephone dialing system.

56.     Upon information and belief, the predictive dialing system employed by the Defendants transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

57.     Upon information and belief, Plaintiff and the class members never consented to Defendants using an ATDS to communicate with their cell phones for any reason.

58.     Indeed, no later than February 15, 2018, Plaintiff had no existing business relationship as a consequence of the Settlement Agreement severing any ties to any of the Defendants.

59.     Moreover, the Defendants never had prior express consent to place automated calls or SMS text messages to the Plaintiff using an ATDS.

60.     Therefore, Defendants or its agent(s) were not to call the Plaintiff's cell phone ever again since it had no consent to place such calls (if any ever existed) to the Plaintiff via an ATDS (including SMS text messages).  Indeed, this is what the Defendants bargained for in the Settlement Agreement.

61.     However, Defendant placed calls to the Plaintiff's cellular telephone without consent using an ATDS in violation of the TCPA.

62.     Defendant's ATDS has the capacity to store telephone numbers to be called, using a random or sequential number generator.

63.     The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

64.     Defendant's calls to Plaintiff's cellular telephone were not for "emergency purposes."

65.     The burden is on Defendant to demonstrate that it had prior express consent to call Plaintiff's cellular phone with an ATDS.

66.     The Plaintiff suffered actual harm and loss, since each of the unwanted calls depleted the Plaintiff's cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm.  While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from the Defendant's unwanted phone calls to the Plaintiff's cell phone.

67.     Plaintiff also suffered from an invasion of a legally protected interest by placing calls to the Plaintiff's personal phone line when the Defendant had no right to do so, resulting in an invasion of Plaintiff's right to privacy.  The TCPA protects consumers from this precise behavior.

68.     Indeed, Plaintiff wanted nothing more to do with the Defendants as commemorated in the Settlement Agreement; yet the Defendants would simply not cease the harassment – not an anomalistic occurrence with these specific defendants.[2]

69.     Plaintiff has a common law right to privacy.  *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

70.     "[W]hen a person must endure the bother of unwanted calls in the privacy of her home, her harm is similar to other traditional injuries that courts have long recognized, such as invasion of privacy and nuisance."  *Toldi v. Hyundai Capital Am.*, No. 2:16-CV—01877-APG-GWF, 2017 WL 736882, at *2 (D. Nev. Feb. 23, 2017).

71.     Plaintiff was also personally affected, since the Plaintiff felt that the Plaintiff's privacy had been invaded when the Defendant placed calls and SMS

---

[2] See CFPB Consent Order with TMX Finance, LLC, where "The Consumer Financial Protection Bureau (Bureau) has reviewed the lending and debt-collection practices of TMX Finance LLC (Respondent, as defined below) and has identified unfair and abusive practices in Respondent's lending and debt-collection practices in violation of§§ 1031 and 1036(a)(1)(B) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531 and 5536(a)(1)(B)." https://files.consumerfinance.gov/f/documents/092016_cfpb_TitleMaxConsentOrder.pdf

messages to the Plaintiff's phone line without any consent to do so.

72.     The injury suffered by Plaintiff is concrete because Defendants'

violations caused Plaintiff to suffer an invasion of privacy.

## CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this action on behalf of himself and Class Members of

the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3)

and/or (b)(2).

74.     Plaintiff proposes to represent the following Class consisting of and

defined against all Defendants as follows:

> All persons within the United States who received any
> telephone call(s) and/or SMS text messages from any
> Defendant herein or its agent(s) and/or employee(s), not for an
> emergency purpose, on said person's cellular telephone, made
> through the use of any automatic telephone dialing system,
> within the four years prior to the filing of this Complaint.

75.     The Defendants and its employees or agents are excluded from the

Class.  Plaintiff does not know the number of members in the Class, but believes the

Class members number in the several hundreds, if not more.  Thus, this matter should

be certified as a Class action to assist in the expeditious litigation of this matter.

76.     Plaintiff and members of the Class were harmed by the acts of the

Defendants in at least the following ways: The Defendants, either directly or through

its agents, illegally contacted Plaintiff and the Class members via their cellular

15

telephones and sending  SMS text messages by using a predictive dialer, thereby

causing Plaintiff and the Class members to incur certain cellular telephone charges or

reduce cellular telephone time for which Plaintiff and the Class members previously

paid, and invading the privacy of said Plaintiff and the Class members as discussed

above.  Plaintiff and the Class members were damaged thereby.

77.     This suit seeks only damages and injunctive relief for recovery of

economic injury on behalf of the Class and it expressly is not intended to request any

recovery for personal injury and claims related thereto.  Plaintiff reserves the right to

expand the Class definition to seek recovery on behalf of additional persons as

warranted as facts are learned in further investigation and discovery.

78.     The joinder of the Class members is impractical and the disposition of

their claims in the Class action will provide substantial benefits both to the parties

and to the court.  The Class can be identified through the Defendants' records or the

Defendants' agents' records.

79.     There is a well-defined community of interest in the questions of law

and fact involved affecting the parties to be represented.  The questions of law and

fact to the Class predominate over questions which may affect individual Class

members, including the following:

        i.     Whether, during the proposed class period, the Defendants or its
              agent(s) placed any calls and/or sent any SMS text messages to
              the Class (other than a message made for emergency purposes or
              made with the prior express consent of the called party) using

16

            any automatic telephone dialing system to any telephone number assigned to a cellular telephone service;

    ii.      Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

    iii.    Whether the Defendants and its agents should be enjoined from engaging in such conduct in the future.

80.    As a person that received at least one non-emergency call via an ATDS or an SMS text message to his cell phones without Plaintiff's prior express consent, Plaintiff is asserting claims that are typical of the Class.  Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

81.    Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and the Defendants will likely continue such illegal conduct.  Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

82.    Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

83.    A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce the

Defendants to comply with federal. The interest of Class members in individually controlling the prosecution of separate claims against the Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

84.     The Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT I

### Negligent Violations of the
### Telephone Consumer Protection Act,
### (47 U.S.C. § 227, *et seq*.)

85.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

86.     Defendants negligently placed multiple automated calls and/or SMS text messages to cellular numbers belonging to Plaintiffs without Plaintiffs' prior express consent.

87.     Each of the aforementioned calls by Defendants constitutes a negligent violation of the TCPA.

88.     As a result of Defendants' negligent violations of the TCPA, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each call

18

in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

89.     Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT II

### Knowing and/or Willful Violations of the
### Telephone Consumer Protection Act,
### (47 U.S.C. § 227, *et seq.*)

90.     Plaintiffs repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

91.     Defendants knowingly and/or willfully placed multiple automated calls and/or SMS text messages to cellular numbers belonging to Plaintiffs without Plaintiffs' prior express consent.

92.     Each of the aforementioned calls by Defendants constitutes a knowing and/or willful violation of the TCPA.

93.     As a result of Defendants' knowing and/or willful violations of the TCPA, Plaintiff and the Class are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

94.     Additionally, Plaintiff and the Class are entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs seeks for himself and each Class member that judgment be entered against the Defendants awarding as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

3. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

4. An award of attorney's fees and costs to counsel for Plaintiff; and

…

…

…

5.  Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: April 6, 2018

Respectfully submitted,

By: /s/ David H. Krieger, Esq.

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
Fax: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorney for Plaintiff
*JEFF HANSON, indvidually and on behalf*
*of all others similarly situated*