# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JEFFREY W. HANSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TMX FINANCE, LLC dba TITLE MAX OF NEVADA, INC.; TMX FINANCE OF NEAVADA, INC.; and TITLEMAX OF NEVADA, INC. dba TITLEMAX and/or TITLEMAX OF NEVADA ,<br><br>Defendants. | Case No. 2:18-cv-00616-RFB-CWH<br><br>ORDER |

## I.　　INTRODUCTION

Before the Court are Defendant TitleMax of Nevada, Inc. dba TitleMax's Motion to Compel Arbitration, ECF No. 7; Motion to Stay Proceeding and Strike All Class Allegations, ECF No. 8; and Motion for Leave to File Supplemental Authority, ECF No. 16.

## II.　　PROCEDURAL BACKGROUND

Plaintiff Jeffrey Hanson sues Defendant for negligent and knowing or willful violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*[1] ECF No. 1. Defendant now moves to compel arbitration. ECF No. 7. Plaintiff opposed the motion, and Defendant replied. ECF Nos. 9, 12.

Defendant alternatively moves to stay the matter pending arbitration and to strike all class allegations in the Complaint. ECF No. 8. Plaintiff opposed, and Defendant replied. ECF Nos. 10, 12. The Court previously ruled on the Motion to Stay in part, staying the matter pending resolution

---

[1] Plaintiff also sued two additional defendants, who were later dismissed voluntarily. Compare ECF No. 1 with ECF No. 6.

of the Motion to Compel Arbitration and deferring the request to strike all class allegations. ECF No. 15.

Defendant most recently seeks leave to file supplemental authority to support the Motion to Compel Arbitration. ECF No. 16.

### III. FACTUAL BACKGROUND

The Court makes the following findings of fact. Plaintiff completed an application to obtain a short-term loan with Defendant on November 2, 2017. The application contains an arbitration clause, which states:

> **NOTICE OF ARBITRATION AGREEMENT: EACH APPLICANT WHO SUBMITS A FULL CREDIT APPLICATION WILL BE REQUIRED TO ENTER INTO A SEPARATE WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT (THE "ARBITRATION AGREEMENT") WITH TITLEMAX AS A CONDITION TO SUBMITTING THIS CREDIT APPLICATION AND IN CONSIDERATION OF TITLEMAX ACCEPTING AND CONSIDERING THIS CREDIT APPLICATION. YOU MAY OPT-OUT OF ARBITRATION AS DESCRIBED IN THE ARBITRATION AGREEMENT. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO HAVE A JURY TRIAL, TO ENGAGE IN DISCOVERY (EXCEPT AS MAY BE PROVIDED FOR IN THE ARBITRATION RULES), AND TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS OR IN ANY CONSOLIDATED ARBITRATION PROCEEDING OR AS A PRIVATE ATTORNEY GENERAL. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO BE UNAVAILABLE IN ARBITRATION.**

Defendant approved the application on the same day, resulting in a loan agreement between the parties. The agreement states, in part, that:

> **WAIVER OF RIGHT OT TRIAL BY JURY: TRIAL BY JURY IS A CONSTITUTIONAL RIGHT. UNDER CERTAIN CONDITIONS THE LAW ALLOWS PARTIES TO WAVIE THIS RIGHT. LENDER AND I KNOWINGLY AND FREELY WAIVE ALL RIGHTS TO A JURY TRIAL FOR ANY SUIT RELATED DIRECTLY OR INDIRECTLY TO (A) THIS NOTE OR (B) THE LOAN. THIS JURY TRIAL WAIVER WILL NOT CHANGE ANY ARBITRATION CLAUSE TO WHICH LENDER AND I AGREE, SUCH CLAUSE HAS ITS OWN SEPARATE JURY TRIAL WAVIER.**

/ / /

The agreement defines dispute as having "a broad meaning," including "all claims and disagreements related to [the] application, [the agreement], … or [Plaintiff's] dealings with [Defendant]." Under the agreement, Plaintiff also gave up the following rights related to disputes subject to the arbitration clause:

> **1. Have a jury decide Disputes.**
> **2. Have a court, other than a small claims court, decide Disputes.**
> **3. Serve as a private attorney general or in a representative capacity.**
> **4. Join a Dispute I have with a dispute by other consumers.**
> **5. Bring or be a class member in a class action or class arbitration.**

The agreement also contains an opt-out provision, which afforded Plaintiff sixty days to opt out of the arbitration clause. To opt out, the agreement required Plaintiff to send to Defendant a writing that included Plaintiff's name, address, loan number, and loan date. The agreement also required that the writing include a statement that Plaintiff "opt[ed] out" of the arbitration clause. The opt-out notice could not be sent electronically; the opt-out provision required Plaintiff to send the writing to Defendant's mailing address identified in the agreement.

Plaintiff sued Defendant on December 1, 2017 in state court, alleging claims under Chapter 604A of the Nevada Revised Statutes. Defendant did not move to compel arbitration. It instead settled the state-court matter on February 15, 2018 through a settlement agreement.[2]

Plaintiff sued Defendant in this action on April 6, 2018, alleging Defendant placed calls and sent text messages to Plaintiff's cell phone without consent in violation of the Telephone Consumer Protection Act. The calls or text messages related to a debt that was resolved via the settlement agreement in the state-court action.

## IV. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides two methods for

---

[2] The Court will not refer to facts relating to the arbitration clause in the settlement agreement, or any corresponding argument, referenced by Defendant for the first time in the reply.

enforcing arbitration: (1) an order compelling arbitration of a dispute; and (2) a stay of pending litigation raising a dispute referable to arbitration. 9 U.S.C §§ 3, 4.

"By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). The FAA limits the district court's role to determining (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ...." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24–25 (1983). Thus, "[t]he standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms." Republic of Nicar. v. Std. Fruit Co., 937 F.2d 469, 475 (9th Cir.1991). In fact, "Section 2 of the FAA requires courts to enforce agreements to arbitrate according to their terms, in order to place an arbitration agreement upon the same footing as other contracts and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." O'Conner v. Uber Technologies, Inc., 904 F.3d 1087, 1093 (9th Cir. 2018) (internal quotations and citations omitted). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (internal quotation omitted).

The determination of whether a particular issue should be determined by the arbitrator rather than the court is governed by federal law. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). However, when deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. 9 U.S.C. § 3. Although the statutory language

1  supports a mandatory stay, the Ninth Circuit has interpreted this provision to allow a district court
2  to dismiss the action. See Sparling v. Hoffman Const. Co., 864 F.2d 635, 638 (9th Cir. 1988). A
3  request for a stay is not mandatory. Martin Marietta Aluminum, Inc. v. Gen. Elec. Co., 586 F.2d
4  143, 147 (9th Cir. 1978).

**V.    DISCUSSION**

The parties dispute a single issue: whether Plaintiff opted out of the arbitration clause in the agreement by filing the state-court action within sixty days of November 2, 2017. Plaintiff acknowledges that a separate writing with the required information was not sent to the identified address in the agreement. But Plaintiff relies on Bickerstaff v. Suntrust Bank, 788 S.E.2d 787 (Ga. 2016) to argue that he opted out of the arbitration clause by substantially complying with its requirements when he filed his complaint in the state-court matter.

To interpret the terms of the contract and determine if an agreement to arbitrate exists, the Court turns to Nevada law. Nevada employs "[t]raditional rules of contract interpretation" when interpreting a contract "to discern the intent of the contracting parties[.]" Am. First Fed. Credit Union v. Soro, 359 P.3d 105, 106 (Nev. 2015). Under Nevada law, when the language of a contract is unambiguous, "the contract will be enforced as written." Id. Further, unlike the state law relied on by the Bickerstaff court, Nevada has not codified the doctrine of substantial compliance in relation to all contracts; Nevada instead recognizes the doctrine in certain contexts. See, e.g., Leven v. Frey, 168 P.3d 712 (Nev. 2007) (explaining the doctrine applies to certain statutory procedural rules but not in "other contexts" and the "specific circumstances" of the context determines if the doctrine applies).

Plaintiff fails to point to any Nevada law allowing unambiguous terms—like those in the at-issue opt-out provision—to be interpreted in a manner under which a party may escape the requirements set forth by the terms. Plaintiff also fails to point to any explicit Nevada law, like the explicit state law in Bickerstaff, that extends the doctrine of substantial compliance to any contract or to, at minimum, an analogous contract. Further, the Court notes that Nevada maintains a "strong public policy [that] favors arbitration, and arbitration clauses are generally enforceable." Gonski v. Second Judicial Dist. Court of State ex rel. Washoe, 245 P.3d 1164, 1168–69 (Nev.

2010) (overruled on other grounds). Thus, the Court finds that Nevada law requires the terms of the parties' agreement to be interpreted as written due to the unambiguous nature of the opt-out provision.

The plain terms of the opt-out provision of the agreement required Plaintiff to send a writing containing certain information to Defendant at a certain address. Plaintiff acknowledges that he failed to do so before bringing this suit. Plaintiff therefore failed to opt out of the arbitration clause under the terms of the agreement. Because the agreement mandates arbitration unless Plaintiff opts out of the arbitration clause, the Court grants Defendant's Motion to Compel Arbitration and dismisses this action without prejudice.

## VI. CONCLUSION

**IT IS ORDERED** that Defendant's Motion to Compel Arbitration (ECF No. 7) is GRANTED.

**IT IS ORDERED** that Defendant's Motion to Stay the Proceeding and Strike All Class Allegations (ECF No. 8) is DENIED as moot.

**IT IS ORDERED** that Defendant's Motion for Leave to File Supplemental Authority (ECF No. 16) is DENIED.

**IT IS ORDERED** that this matter is DISMISSED without prejudice. The Clerk of the Court is instructed to close this matter accordingly.

DATED: March 19, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**